428 B.R. 545 (2009)
In re Jadwiga H. PAWLOWSKI, Debtor.
Monika Bernardez, an Infant by Her Mother and Natural Guardian, Lesbia Bernardez, Appellant,
v.
Jadwiga H. Pawlowski, Appellee.
Nos. 08-CV-0366 (RRM)(RML), 08-CV-1213 (RRM)(SMG).
United States District Court, E.D. New York.
March 22, 2009.
*546 John M. Daly, Mitchell Gittin, Fitzgerald & Fitzgerald, P.C., Yonkers, NY, for Appellant.
Todd E. Duffy, Anderson, Kill & Olick, New York, NY, Dennis Joseph Nolan, *547 James E. Atkins, Duffy & Atkins LLP, New York, NY, for Appellee.

ORDER
MAUSKOPF, District Judge.
Appellant and putative judgment creditor Monika Bernardez, an infant, by her mother and natural guardian, Lesbia Bernardez (herein after, "Bernardez"), appeals two Orders of the Bankruptcy Court (Milton, J.), one dated December 11, 2007 expunging her proof of claim for personal injury liability against Chapter 11 Debtor Jadwiga H. Pawlowski, and a second dated March 6, 2008 confirming the Debtor's bankruptcy reorganization plan (the "Plan"). The two appeals having been consolidated before this Court, Pawlowski cross-moves to dismiss both as equitably moot, citing the substantial consummation of the bankruptcy estate's reorganization Plan; the prejudice to the debtor and to other creditors in unwinding the Plan; and Bernardez's failure to take all reasonable steps to appeal and/or stay subsequent Bankruptcy Court action. For the reasons below, the Court agrees with the Debtor's position, and Bernardez's appeals are dismissed as equitably moot.

PROCEDURAL HISTORY AND BACKGROUND
In or about 2002, Bernardez, on her infant daughter's behalf, sued Pawlowski in New York State Court seeking damages for lead paint poisoning injuries. The personal injury Complaint asserted claims against Pawlowski only in her capacity as executrix of the Sadlowska estate (the "Estate"), which owned shares in 2328 University Avenue Corporation, the single-asset corporate owner of the Bronx, New York apartment building where the infant Bernardez resided.
Upon a trial on the merits, a Bronx, New York jury returned a verdict against Pawlowski for $1,240,000 in compensatory damages and an additional $400,000 in punitive damages. On March 28, 2007, subsequent to the jury's verdict, but prior to any post-verdict motions and the State Court's entry of final judgment (a procedure precluded by the Bankruptcy Code's automatic stay requirements), Pawlowski voluntarily filed for Chapter 11 bankruptcy protection.
On July 23, 2007, Bernardez timely filed her proof of claim,[1] asserting a general unsecured claim against Pawlowski in the amount of $1,640,000. On August 16, 2007, Bernardez sought relief from the automatic stay, which motion was denied by the Bankruptcy Court's Order dated, November 1, 2007. Bernardez did not appeal that Order.
Thereafter, on November 8, 2007, Pawlowski moved, inter alia, to expunge and disallow Bernardez's proof of claim. That motion was granted December 11, 2007 (the "Expungement Order"). On December 20, 2007, Bernardez filed the instant appeal of the Expungement Order (No. 08-CV-0366). Although Bernardez properly served Pawlowski with her Notice of Appeal, she failed to serve any of the bankruptcy creditors potentially impacted by such appeal. Moreover, Bernardez did not seek to stay enforcement of the Bankruptcy Court's Expungement Order pending appeal.
On January 2, 2008, the Bankruptcy Court moved forward with reorganization. On that date, Pawlowski filed and served her Disclosure Statement and proposed *548 Plan of Reorganization, which filing was amended on January 22, 2008. On January 25, 2008, Bernardez objected to the proposed reorganization plan and simultaneously sought to vacate the Bankruptcy Court's prior Expungement Order.
On February 8, 2008, Pawlowski responded with an Amended Disclosure Statement, which argued, in relevant part, that the proposed plan should be confirmed over Bernardez's objections, given Bernardez's failure to seek a stay. Notwithstanding Bernardez's counsel's documented and uncontroverted failure to timely seek a stay of the plan confirmation prior to the issuance of the February 8, 2008 Amended Disclosure Statement, it did not thereafter interpose a formal motion to stay the anticipated plan confirmation hearing. Thus, in the absence of a stay motion, a plan confirmation hearing was scheduled for and held on March 6, 2008.
The March 6, 2008 confirmation hearing again highlighted the progression of the confirmation process in the absence of a stay application. To wit, Debtor's counsel made the following record in further support of confirmation:
For the record, Ms. Bernardez's counsel has conceded time and time again that he has not applied for a stay in the bankruptcy proceedings ... pending her appeal.... There has been significant time for Ms. Bernardez to file for a stay of these proceedings, and they have not.... Although there is an appeal pending [08-CV-0366], there has been no stay pending that appeal, as Ms. Bernardez's counsel has admitted in the papers.
08-CV-1213 Record on Appeal (hereinafter, "R.") 20.32-33.
The Bankruptcy Court then considered Bernardez's objection to plan confirmation, and made clear its basis for proceeding to confirm the proposed plan over such objection. First, the Bankruptcy Court clarified that, contrary to Bernardez's assumptions, its decision to disallow and expunge Bernardez's claim was premised upon full and careful consideration of the merits of her claim, and not upon mere technical default.[2] Accordingly, the Court concluded that despite ample process, her claim was without merit. Second, the Court noted that the proposed plan fully resolved all surviving claims, including as to the following *549 creditors: (1) JP Morgan Chase, (2) Bank of America NA, (3) Household Bank (SB), N.A., (4) American Express Centurion Bank, (5) Bank of America, and (6) the Internal Revenue Service. The Court further determined that the interests of these creditors mitigated in favor of expedient plan confirmation.
Next, the Bankruptcy Court considered but rejected Bernardez's oral motion for a stay, stating: "I'm not going to hold in abeyance a ruling on confirmation of the Plan, because there is a matter regarding one claim on appeal." R. 20.34. The Bankruptcy Court further stated:
.... Counsel, if he so chooses to file an appeal from this order [the plan confirmation order], can at that time, pursuant to Rule 8005, file an application with this Court. And I think that would be the appropriate vehicle to pursue an application for a stay pending appeal.
And specifically, Mr. Gitten [Bernardez's counsel], I would look to the language of Rule 8005, which provides that the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code, which I have just done. I continued other proceedings, such as this confirmation hearing, and this is the phrase I had in mind: `make any other appropriate order during the pendency of appeal on such terms as will protect the rights of all parties-in-interest.'
In addition to all the relevant factors that the Court considers in determination of a stay pending appeal, I think, absent a specific presentation as to what steps or provisions you would request this Court to make to protect the rights of all parties-in-interest pending an appeal, that such an application in this instance would be denied.
R. 20.36-37.
At the conclusion of the March 6, 2008 hearing, the Bankruptcy Court thus confirmed the proposed plan. The Court's March 6, 2008 Confirmation Order stated, in relevant part:
Upon making all payments contemplated by the Plan, in accordance with Article X of the Plan, and except as otherwise provided in the Plan or in this Order, entry of this Order acts as a discharge of and injunction against all Causes of Action against the Debtor or its Estate that arose before the Effective Date to the extent permitted by section 1141 of the Bankruptcy Code.
R. 11.
Bernardez appealed the Bankruptcy Court's Confirmation Order to this Court on March 14, 2008. That appeal is also pending before this Court (No. 08-CV-1213) and, together with the appeal of the Bankruptcy Court's Expungement Order (No. 08-CV-0366), is addressed herein.
Thereafter, on March 24, 2008, Bernardez's counsel moved the Bankruptcy Court to stay effectuation of the Plan pending determination of the instant appeals. On April 18, 2008, after additional briefing, a hearing on the application to stay Plan consummation was held. On April 24, 2008, the Bankruptcy Court denied the stay application on the merits. Bernardez did not appeal that decision, nor did Bernardez pursue further relief, which relief could havebut did notinclude an appeal from March 24, 2008 stay denial to this Court, and, if necessary, appellate mandamus relief from the United States Court of Appeals for the Second Circuit. See, e.g., In re Pub. Svc. Co. of New Hampshire, 963 F.2d 469, 472 (1st Cir. 1992). Pawlowski, relying upon the Confirmation Order and section 1141 of the Bankruptcy Code, refinanced her home, distributed the proceeds of that refinancing *550 to her allowed creditors, and obtained a discharge from liabilities.

DISCUSSION
Upon careful consideration of the record and for the reasons set forth below, this Court agrees that, despite fair notice and opportunity, Bernardez has failed to take all appropriate measures to preserve and advance her potentially meritorious claim in the manner anticipated and proscribed in the Bankruptcy Code and its attendant case law. Bernardez's failure to invoke the procedural tools necessary to stop or slow consummation of the bankruptcy process has permitted full consummation of the bankruptcy Plan and has occasioned by the fault of no other partya scenario by which the grant of equitable relief to Plaintiff would require its preclusion to all others in this matter. As such, this Court finds Plaintiffs respective appeals, 08-CV-366 and 08-CV-1213, equitably moot.

I.

EQUITABLE MOOTNESS
The jurisprudential doctrine of equitable mootness holds that "an appeal should ... be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co., v. Official Comm. of Unsecured Creditors of LTV Steel Co., 988 F.2d 322, 325 (2d Cir.1993). In sum, "equitable mootness does not involve a court's inability to alter the outcome by fashioning relief, but rather, a court's unwillingness to do so.'" In re Box Bros. Holding Co., 194 B.R. 32, 39 (Bankr.D.Del.1996) (quoting In re UNR Indus., 20 F.3d 766, 769 (7th Cir.1994) (Easterbrook, J.)).
Pursuant to the Second Circuit's formulation in the seminal case In re Chateaugay Corp., 10 F.3d 944, 952 (2d Cir. 1993) (see also, In re Chateaugay Corp., 94 F.3d 772, 776 (2d Cir.1996)), courts must assess whether prudence and equity militate against reaching the merits of a bankruptcy appeal. In so doing, courts consider the potential effect to all creditors where distributions have been made, thus resulting in the substantial consummation of a legally sufficient and feasible reorganization plan. The strong presumption of mootness that inures in such cases will give way only where the appellant has adequately demonstrated that (1) the court may still order some effective relief; (2) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (3) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the bankruptcy court; (4) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (5) the appellant pursued with diligence all available remedies to execution of the plan throughout the proceedings. Chateaugay, 94 F.3d 772 at 776; In re Kenwin Shops, Inc., No. 99 Civ. 10485, 2000 WL 351404, at *2 (S.D.N.Y. Apr. 5, 2000).
As set forth below, this Court finds (a) substantial Plan consummation, in that the anticipated monetary distribution to Pawlowski's allowed creditors has been effectuated, and (b) that the Plan itself was viable and properly confirmed by the Bankruptcy Court. In light of those determinations, this Court finds that Bernardez fails to rebut the resulting presumption of mootness in the manner set forth in Chateaugay. Her instant appeals are therefore dismissed as moot.

*551 A. Substantial Consummation

As defined in the bankruptcy code, "substantial consummation" is:
a) the transfer of all or substantially all of the property proposed by the plan to be transferred;
b) assumption by the debtor of by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
c) commencement of distribution under the plan.
11 U.S.C. § 1101(2); In re Metromedia Fiber Network, Inc., 416 F.3d 136, 144 (2d Cir.2005). The import of plan consummation, as the principal mootness inquiry, lies in the fact that it informs certain supplemental considerations, including the twin goals of providing finality for creditors and a "fresh start" for debtors. See Box Bros., 194 B.R. at 39. As such, evaluating whether the relevant bankruptcy reorganization plan has been substantially consummated is "paramount to a resolution of the dispute between the parties." Id. at 40; see also In re Manges, 29 F.3d 1034, 1041 (5th Cir.1994). Indeed, where there has been substantial consummation, there is a presumption that to grant further relief would be inequitable or impractical. In re Enron Corp., 326 B.R. 497, 502 (S.D.N.Y. 2005); In re Texaco, Inc., 92 B.R. 38, 46 (S.D.N.Y.1988).
In this case, the Court finds that Pawlowski's bankruptcy Plan has been substantially consummated. Pursuant to the Plan, Pawlowski refinanced her home and used the resulting proceeds to satisfy substantial debt obligations to her allowed creditors, as contemplated. Having received those distributions, Pawlowski's creditors are deemed to have relied upon the Plan. See In re Adelphia Commc'ns. Corp., 367 B.R. 84, 97 (S.D.N.Y.2007). Thus, there can be no question that further consideration of Bernardez's instant appeals substantially implicates the interests of parties not before this Court, and who are without adequate notice of the potential consequences involved. See id. ("[A]ll creditors are potentially at risk and should be parties. Appellants fail to explain how and why all of those creditors each of whom received unencumbered distributions under the Plan and very well may no longer be within the reach of the Court's jurisdictionare sufficiently on notice that their distributions are vulnerable to disgorgement on appeal.").

B. The Reorganization Plan was Properly Confirmed

In light of substantial consummation, the Court next considers the propriety of confirming the Plan itself. In appealing the Bankruptcy Court's Confirmation Order, Bernardez argues that the Bankruptcy Court's failure to contemplate reinstatement of her claim rendered the Plan "unfeasible," as that term is defined in Bankruptcy Code Section 1129(a)(11). This Court disagrees. Evaluating feasibility under the statute requires the Court to determine that:
Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.
11 U.S.C. § 1129(a)(11). Upon review of the record, this Court finds the Bankruptcy Court's decision to confirm the Plan as feasible is without error.
Plan feasibility is concerned with whether a plan will be reasonably successful in effecting the Bankruptcy Code's goals of finality and closure. See In re *552 Leslie Fay Cos., Inc., 207 B.R. 764, 788-89 (S.D.N.Y.1997) ("Basically, feasibility involves the question of the emergence of the reorganized debtor in a solvent condition and with reasonable prospects of financial stability and success. It is not necessary that success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success.") (citations omitted). Appealing the Bankruptcy Court's Confirmation Order, Bernardez alleges the Bankruptcy Court's failure to properly consider the potential negation and ultimate futility of the Plan, should her personal injury claim be reinstated on appeal. As reinstatement would necessarily thrust Pawlowski back into bankruptcy or otherwise require the unwinding of the proposed Plan, Bernardez argues that the Confirmation Order ran afoul of the finality principle underlying § 1129's feasibility requirement. See In re Harbin, 486 F.3d 510, 519 (9th Cir.2007). For the reasons below, this Court finds Harbin inapt.
In Harbin, Sherman, the potential creditor, won a substantial jury verdict against the debtor, Harbin, in Harbin's personal capacity. Prior to entry of judgment, the trial court set aside the verdict on grounds that Harbin could not be held personally liable. The factual similarities between Harbin and the instant case end there. Unlike here, Sherman sought and obtained relief from the automatic stay in order to appeal the trial court's action. Harbin, 486 F.3d at 514 n. 1. Indeed, Sherman, whose claims the bankruptcy court only conditionally dismissed, was provided an opportunity to reassert his claims should the state-court jury verdict be reinstated on appeal. Id. at 514. Thus, unlike here, the bankruptcy court, in confirming the plan without allowance for Sherman's claim, wholly ignored the very potentiality it must have contemplated when granting relief from the automatic stay. Owing to that grave deficiency, the plan was deemed unfeasible. No such circumstance is present here.
As discussed above, the bankruptcy court here was not contending with a disputed and sub judice state-court claim. Contrary to the facts in Harbin, the Bankruptcy Court here retained exclusive jurisdiction of Bernardez's claim, denied relief from the automatic stay, and then disallowed and expunged that claim upon a considered review of its underlying merits. Notwithstanding claim disallowance and expungement, the bankruptcy court nonetheless gave full hearing to Bernardez's confirmation objectiongoing so far as to provide Bernardez with an opportunity to make a formal stay application, process the bankruptcy court need not have permitted under the law of this Circuit. See In re Kreisler Group, Inc., 648 F.2d 86, 87 (2d Cir.1981) (holding that any claimant whose claim had been disallowed is without standing to object to Plan confirmation); see also In re Southold Dev. Corp., 136 B.R. 40, 42 (E.D.N.Y.1992) (same).
Here, because the Bankruptcy Court's March 6, 2008 decision to proceed with Plan confirmation was expressly predicated on the court's view that the Bernardez claim was not likely to be successful on appeal, the bankruptcy court reasonably determined that the Plan's failure to make allowance for the unlikely reinstatement of such claim on appeal did not render it unfeasible. Thus, having given ample consideration to the issueas evident on the record of the confirmation hearingthe Bankruptcy Court determined that the existence of litigation over a single disallowed claim was no basis to withhold effectuation of a reorganization plan that provided full satisfaction to all remaining creditors. This Court finds no error in that carefully considered determination. Indeed, nothing in Harbin suggests that *553 ongoing litigation renders a plan inherently unfeasible; it requires merely that the presiding court exercise discretion in evaluating feasibility in light of such claims. See In re ELL 11, LLC, No. 07-60089, 2008 WL 916695, at *2 (Bankr.M.D.Ga. Apr. 2, 2008) (distinguishing Harbin and holding that ongoing litigation does not render a reorganization plan unfeasible).
Bernardez disagrees with the Bankruptcy Court's decision to retain jurisdiction over her claim, its refusal to permit her to return to state court, and the disallowance and expungement of her claim. Nonetheless, those rulings comprise the operative background against which the decision to confirm the Plan must be evaluated. See Southold, 136 B.R. at 42 (citing In re Charter Co., 92 B.R. 510, 512-13 (M.D.Fla. 1988) (applying doctrine of "law of the case" to dismiss appeal of Confirmation Order where the same court had previously held that appellant had no cognizable claim)); see also In re ELL 11, (denying confirmation objection on grounds of court's prior disallowance determination). The only question, at least for purposes of appealing Plan confirmation, is whether in light of these facts, the Plan feasibly provided for satisfaction of claims by the allowed creditors. It did so. As such, this Court finds that confirmation of the Plan as feasible was appropriate, and that Bernardez's contingent, disallowed claim need not have been considered in the Bankruptcy Court's feasibility analysis. For these reasons, Bernardez's appeal of the Confirmation Order is dismissed.

C. Bernardez fails to rebut the applicable mootness presumption
This Court having concluded (a) that Pawlowski's Plan has been substantially consummated, and (b) that underlying confirmation of such Plan was both legally permissible and factually appropriate, the Court now considers the heart of the mootness question.
As stated above, to overcome the presumption of mootness inherent in cases where, as here, the plan has substantially been consummated, the claimant must satisfy each of the factors set forth in Chateaugay. See Chateaugay, 10 F.3d 944 at 952 (describing five factors and noting that "substantial consummation will not moot an appeal if all of the [five] circumstances exist") (emphasis added); Kenwin Shops, 2000 WL 351404, at *2. In addressing the Chateaugay analysis here, the Court begins with the fifth and final factordiligent pursuit of stay. Kenwin Shops, 2000 WL 351404, at *2. Whether a stay has been obtained is critical to the mootness analysis because granting relief to claims arising from substantially consummated reorganization plans has repercussions upon the reorganization scheme as a whole; impacts which must be considered by the Court. See Adelphia, 367 B.R. at 97-98. On this point, the record leaves no doubt that Bernardez's counsel left on the table a host of stay procedures that may have prevented Plan consummation. See, e.g., Pub. Svc. Co. of New Hampshire, 963 F.2d at 472. As stated above, Counsel notably failed to make a formal application for stay until after Plan confirmation. Subsequently, upon denial of that application, Counsel did not seek available relief from either this Court or the Court of Appeals. Even if all avenues available had been sought and denied,[3] Bernardez still had the option, pursuant to Federal Rule *554 62, to bond her way out of the predicament in which she now finds herself. She declined to do so. See Fed.R.Civ.P. 62(d); Fed. R. Bankr.P. 7001(5)(7); In re Pub. Svc. Co. of New Hampshire, 963 F.2d 469, 473 n. 9 (1st Cir.1992) (dismissing appeal as moot, stating: "While we recognize the practical difficulties of posting a supersedeas bond in a matter of this magnitude, appellants did not propose a supersedeas bond in any amount. In any event, ... appellants should not have sat by while this case drifted along a routine, unexpedited course.") (internal quotations omitted).
Bernardez's failure to forestall Plan confirmation and consummation must further be viewed against Counsel's demonstrated awareness of the potential repercussions of such action. See Box Bros., 194 B.R. at 40 (considering parties' knowledge of consequences flowing from failure to obtain stay). To wit, the record shows that all parties were well aware of the extensive legal precedents dismissing as moot appeals from unstayed, consummated reorganizations. Having thus been keenly aware that, absent stay, plan confirmation and consummation tend to render moot even meritorious appeals, Bernardez's failure to diligently pursue the relief necessary to halt Plan progression and to maintain the status quo now militates against reaching the merits of her claim.

II.

BERNARDEZ'S ALTERNATIVE PROPOSAL FOR RELIEF
Given the instant appeals' effect on third-party creditors, all of whom have undeniably relied upon the unstayed confirmation, Bernardez suggests the irrelevance of Chateaugay factors two and three by proffering alternative relief that would avoid unwinding the now fully consummated Plan. Bernardez argues that effective reliefthe first Chateaugay factorcould be granted by garnishing Pawlowski's future earnings, thereby preserving the transactions that have taken place under the Plan as well as the interests of all remaining creditors. By these means, Bernardez proposes to sidestep the mootness argument. This Court, however, finds Bernardez's proffered reliefwhich would be funded wholly outside the Plan to be legally impermissible.
Pursuant to the Bankruptcy Code, post-confirmation assets not expressly provided for in the plan are not within the bankruptcy estate, and neither this Court nor the Bankruptcy Court is possessed of jurisdiction sufficient to exercise control over such funds. See 11 U.S.C. §§ 541(a)(6), 1115(a)(2).[4] Even if there were jurisdiction over post-confirmation funds, which there is not, Bernardez's proposal to effectively garnish Pawlowski's future wages would squarely contravene the second Chateaugay factor and the "fresh-start" policy underlying the Bankruptcy Code's discharge procedures. For these reasons, Bernardez's proposal is rejected.
As the bankruptcy court is empowered to satisfy claims exclusively with estate assets, the only effective relief available *555 would necessarily require the Plan to be wholly unwound in order to redistribute the Estate. Accordingly, Bernardez cannot avoid the heart of the equitable mootness inquiry. In light of Bernardez's failure to protect her intereststhat is, to prevent reliance upon and confirmation of the Plan by all the varied and various means availablethis Court; will not undo what is done.

CONCLUSION
For the reasons set forth above, Debtor's cross-motion is GRANTED. Plaintiff Bernardez's bankruptcy appeals 08-CV-0366 (RRM)(RML) and 08-CV-1213 (RRM)(SMG) are hereby dismissed, respectively, as equitably moot.
SO ORDERED.
NOTES
[1] A June 13, 2007 Bankruptcy Court Order established July 28, 2009 as the "bar date" for filing of all nongovernmental proofs of claim.
[2] Several law office failures by Bernardez's counsel, including failure to appear for oral argument on the disallowance and expungement motion, raised issues as to whether Bernardez's claim had been extinguished on the merits or on default. The Bankruptcy Court resolved the issue at the March 6, 2008 hearing:

When I reviewed these motion papers, I can tell you in absolute honesty that I have a separate, distinct and clear recollection that I had read the declaration of creditor's counsel and objection to the motion, as well as the follow up reply. And 1 base my decision on the motion, upon my conclusions of fact and law after I read all of the motion papers. And so I think, regardless of whatever missteps may have been taken... it [Bernardez's opposition on the merits of the claim] was fully considered by the Court, by this Court, in rendering its decision.
With regard to the motion day itself, it certainly was the Court's expectation that all the parties and counsel would be before the Court that day. And I believe we did make some comment to that effect when the matter was called....
My sense in looking at the docket entry is simply that where it says, "no opposition" is really a shorthand, as I think counsel understands, for "no appearance in opposition". There certainly was an objection filed; that objection was reviewed by the Court. So the statement that there is no opposition is not entirely correct. But there was no appearance in opposition, and that's how I read the docket entry to read for that day.
R. 20.14-15.
[3] As courts have held, "whether the stay was not sought, or was sought and denied, is irrelevant to this inquiry. As one court observed, `[a] stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization.'" Box Bros. Holding Co., 194 B.R. at 40 (quoting UNR Indus., 20 F.3d at 769).
[4] 11 U.S.C. 1115(a)(2), adopted pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), now includes post-petition earnings in the Chapter 11 bankruptcy estate, but only insofar as such funds are earned prior to plan confirmation. In In re Dapontes, the bankruptcy court in the District of Connecticut rejected a proposed reorganization plan funded by non-estate, future wages. In re Dapontes, 364 B.R. 866, 868 (D.Conn.2007). Although the definition of estate assets has been redefined to now include post-petition earnings earned prior to plan confirmation, the general principle that courts lack jurisdiction to confirm plans funded by non-estate assets (i.e., post-confirmation assets), as here, holds true. Id.